UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
              :
IN RE FRONTIER INSURANCE GROUP, INC.  :
SECURITIES LITIGATION            :
              :
-------------------------------------------------------------------x  **MEMORANDUM AND ORDER**
              :
THIS DOCUMENT RELATES TO ALL CASES   :  Master File No.
              :  94 Civ. 5213 (LBS) (CLP)
-------------------------------------------------------------------x

*For Plaintiffs*

Mark Levine
Stull, Stull & Brody
6 East 45th Street
New York, NY 10017

Robert M. Kornreich
Wolf Popper Ross Wolf & Jones, L.L.P.
845 Third Avenue
New York, NY 10022

Samuel Sporn
Schoengold & Sporn, P.C.
19 Fulton Street
Suite 406
New York, NY 10038

*For Defendants*

Kurt W. Lenz
Lowenstein Sandler PC
1251 Avenue of the Americas
New York, NY 10020

Robert C. Boneberg
Lowenstein Sandler PC
1251 Avenue Of The Americas
New York, NY 10020

**COPIES MAILED TO ALL PARTIES**
6-20-06

SAND, J.*

On or about May 1, 2003 the parties entered into a "Stipulation and Agreement of Settlement" which this Court (to whom the matter has been assigned by designation) found to be fair and reasonable and thus approved. A dispute has arisen between Plaintiffs and the individual named Defendants, and Plaintiff Richard Hunken now moves on behalf of all Plaintiffs for enforcement of the settlement agreement.[1] For the reasons described below, the motion is granted and Defendants shall provide the funds in accordance with the terms of the contract, i.e. the Settlement Agreement.

FACTS

The contract between the parties defined "Defendants" as "Frontier, the Estate of Walter A. Rhulen, Harry W. Rhulen, Peter L. Rhulen, and Dennis F. Plante." (Stipulation & Agreement at 7, May 1, 2003.) In this dispute, only the individual Defendants and the Estate of Walter Rhulen are present. The dispute centers on the parties' differing interpretations of paragraph I(18) of the Stipulation of Settlement which provides:

> "Settlement Fund" means the sum of not less than $1,600,000. It is anticipated that the Settlement Fund shall be composed of the proceeds of a Frontier directors and officers liability insurance policy in the approximate amount of $500,000 and the proceeds of the sale of the real property at 217 Broadway, Monticello, New York, owned by Frontier (the "Property"), the proceeds of which are anticipated to be not less than $1,100,000, net of brokerage commissions and other customary and reasonable expenses, provided, however that should the Property be sold by the Defendants for a sum, net of brokerage commissions and other customary and reasonable expenses, of more than $1,100,000, the amount by which the net proceeds exceed $1,100,000 shall also be paid into the Settlement Fund. It is further understood that should the Property be sold for less than $1,100,000, net of brokerage commissions and other customary and reasonable expenses, the Defendants shall pay the difference between the sale price and $1,100,000 into the Settlement Fund. Plaintiffs' Co-Lead Counsel shall be apprised of the efforts to sell the Property. Defendants agree to use their best efforts to sell the Property within a commercially reasonable period of time and list the Property with a reputable broker or brokers.

---

*sitting by designation
[1] Accordingly the Court refers to the movants as "Plaintiffs."

(Stipulation & Agreement at 10-11, May 1, 2003.)

Following approval of the settlement Defendants made efforts to sell the Monticello property but were not immediately successful in doing so. Plaintiffs' counsel and Defendants' counsel communicated with each other during this time, and Plaintiffs' counsel being satisfied that Defendants were making reasonable diligent efforts to sell the property made no efforts to expedite its sale.

An affidavit by Plaintiffs' counsel dated January 12, 2006, submitted in support of the motion to enforce the settlement states:

> During the past two years, we were advised that various attempts were made to sell the property, none of which were successful. Although over two years – certainly a commercially reasonable period of time – has already elapsed, we were recently informed that there is presently a contract for sale of the property in force at this time for an amount less that $1.1 million (the "Contract"). However, on July 5, 2005, prior to a closing on the Contract, Frontier filed for protection under Chapter 11 of the bankruptcy code. As a result, should there be a closing on the Contract sometime in the future, given Frontier's enormous secured and unsecured liabilities in the bankruptcy proceeding, the class will not share in the proceeds of the sale because it is a non-secured creditor and non-secured creditors will not be receiving anything under the proposed plan of reorganization. Moreover, any distribution in the bankruptcy will be subject to further lengthy delay.

(Joint Decl. by Sporn, Levine, & Kornreich at 3, Jan. 12, 2006.)

The parties sought and received adjournment of the motion. During this time counsel for the Defendants withdrew due to disputes among his clients and substitute counsel appeared for the Defendants. By the time the Court heard argument the property had, in fact, been sold for $833,500, and pursuant to the Bankruptcy Plan no proceeds were awarded to Plaintiffs.

Plaintiffs assert that they are now entitled to an order entering judgment against the individual Defendants in the amount of $1,050,000 (the difference between the Settlement Fund amount of $1.6 million and the $550,000 previously deposited into the Settlement Fund). It is Plaintiffs' position that the provision in paragraph I(18) stating that the "'Settlement Fund' means

the sum of not less than $1,600,000" is absolute, and that the individual Defendants are jointly and severally liable to pay the remaining balance of $1,050,000.

Defendants assert that it was not their intent to be liable for any amount greater than the difference between the sale price of the property ($833,500) and $1.1 million, and have offered to pay, but have not yet paid, $266,500.

DISCUSSION

The Court's obligation in a contract dispute is to effectuate the intent of the parties as expressed in the chosen contractual language. See Abiele Contracting v. N.Y. City Sch. Constr. Auth., 689 N.E.2d 864, 867-68 (N.Y. 1997). "Where the contract is clear and unambiguous on its face, the courts must determine the intent of the parties from within the four corners of the instrument." Meccico v. Meccico, 559 N.E.2d 668, 669 (N.Y. 1990) (citation omitted).

Although with hindsight it is obvious that the terms of the Settlement Agreement leave much to be desired in resolving this dispute, the Court concludes that Defendants are indeed liable, jointly and severally, to pay $1.05 million into the Settlement Fund. The Court agrees with the Plaintiffs that the first sentence of paragraph I(18) is controlling: "'The Settlement Fund' means the sum of not less than $1,600,000.'" There is nothing in the agreement which suggests that under any circumstances were the Plaintiffs willing to settle the class action for less than $1,600,000.

It was the clear intent of the parties that the fund of $1,600,000 would be comprised of (1) approximately $500,000 (proceeds of a Frontier directors liability insurance policy), (2) the net proceeds of sale of the Monticello property, and (3) payment by the Defendants of whatever balance remained.

Defendants agree that if the property had been sold for a nominal amount they would be liable for the difference between that sale price and $1.1 million. The significance of the sale price of the property is the amount of the proceeds which will go into the Settlement Fund. If the

proceeds were $1, Defendants would be liable for the difference between $1 and $1.1 million. The actual sale price has no significance in determining net proceeds to the Settlement Fund and it is the amount of such proceeds to the fund which determines Defendants' liability.

The Court finds unpersuasive Defendants' attempts to blame the Plaintiffs for what has occurred. Defendants cannot justly fault Plaintiffs for not having pushed Defendants into an earlier sale—an argument which summons up the adage of no good deed going unpunished. Nor is there anything that Plaintiffs did or failed to do with respect to the bankruptcy proceedings which would have altered the fact that Plaintiffs received no proceeds.

The Court recognizes that Defendants may well have anticipated that they would incur no personal liability if the Settlement was fully funded by the insurance proceeds of $500,000 and the proceeds of the property sale. But it is the language of the agreement not the Defendants' estimates of their potential liability that controls. Plaintiffs were not responsible for the fact that the bankruptcy filing occurred after the contract for sale of the property was signed and before the closing date, a scenario which caused Plaintiffs to receive no proceeds from the sale.

The motion is granted; submit order on notice.

SO ORDERED

    Dated: New York, New York
           June 20, 2006

                                        s/Leonard B. Sands
                                                  U.S.D.J.